JORDAN MARSH COMPANY *vs.* BOARD OF ASSESSORS
OF MALDEN.

Suffolk.   January 8, 1971. — March 19, 1971.

Present: TAURO, C.J., SPIEGEL, REARDON, & QUIRICO, JJ.

*Value. Taxation,* Appellate Tax Board: findings. *Evidence,* Compilation of facts.

Upon appeals to the Appellate Tax Board from refusals by the assessors of a city to abate real estate taxes on two adjoining business parcels which were the subject of sales and leases finally leading to the acquisition of the parcels by the taxpayer, the board properly gave "little weight" to the sales and leases where the parties involved were not negotiating at arms length with equal bargaining power.  [108]

Upon appeals to the Appellate Tax Board under the formal procedure from refusals by the assessors of a city to abate real estate taxes on two adjoining parcels located in the central business district and containing two interconnected buildings, a major portion of which was occupied by a department store, and specialty shops, stores, and offices of its subtenants, a decision by the board that the aggregate fair cash value of the two parcels was an amount much less than the assessed value thereof was warranted by substantial evidence set forth in the report of the board, specific statements therein of evidence relied on and its opinion as to each element of value, and subsidiary findings and reasons adequate for a review by this court under G. L. c. 30A, § 14 (8), and the decision was affirmed, even though the board's valuation did not coincide with the valuation given by any witness.  [109–110]

Publications entitled "Operating Results of Department and Specialty Stores" were properly admitted in evidence under G. L. c. 233, § 79B, at a hearing by the Appellate Tax Board of appeals by a department store company from refusals of the assessors of a city to abate taxes on real estate occupied by the store.  [110–111]

APPEALS from decisions of the Appellate Tax Board.

*Walter J. Kelliher (Leo P. DeMarco,* City Solicitor, with him) for the Board of Assessors of Malden.

*Charles Hamilton (George S. Davis & James F. Sullivan* with him) for Jordan Marsh Company.

TAURO, C.J.   Jordan Marsh Company (Jordan) was refused an abatement of its real estate taxes for the years 1961, 1962, and 1963 by the Malden board of assessors (Malden)

on two adjoining parcels of real estate. Jordan filed with the Appellate Tax Board (the board) petitions under formal procedure. G. L. c. 59, §§ 64, 65. The board found the fair cash value of the real estate to be $1,250,000, and Malden appealed. For many years prior to 1955 Jewell A. Dowling owned one parcel of this property (parcel B) in his own right and owned the other parcel (parcel A) under the terms of his father's will. The circumstances surrounding Dowling's lease of the property to the F. N. Joslin Company and the subsequent assumption of the lease by Jordan are described in *Meserve* v. *Jordan Marsh Co.* 340 Mass. 660, decided April 6, 1960.

In 1960 the trustees holding parcel A conveyed the parcel to Alstores Realty Corporation (Alstores) for the sum of $232,000. Alstores is a wholly owned subsidiary of Allied Stores Corporation and acted as the nominee of Jordan. On January 3, 1963, under an agreement among the Salvation Army, the owner of parcel B under the will of Jewell A. Dowling, The Malden Savings Bank, Alstores and Jordan, the title to parcel B was transferred to Alstores. The board concluded that the purchase price was $582,083.

The board found that "Taken together, the two parcels . . . constitute a . . . lot with buildings thereon located in the . . . [c]entral [b]usiness [d]istrict of the City of Malden . . . containing 36,992 square feet, more or less. . . . The buildings consist of two interconnected buildings, one of which is a six-story office building with street floor stores and the other is a one, two and three-story building . . . . The buildings cover about 95% of the total lot area."

"On January 1, 1961, . . . Jordan . . . occupied Parcel A as a tenant paying rent therefor and under obligation to pay more than one-half of the taxes thereon and likewise occupied Parcel B as such tenant on January 1st of 1961, 1962 and 1963." Jordan occupied all of the department store area and a part of the office building for its department store purposes, and the remainder of the office building was occupied by or available for subtenants of Jordan as specialty

shops, stores, and offices. The specialty shops and stores were located on the first floor and the offices on the second and succeeding floors of the office building. For each of the three years beginning January 1, 1961, through January 1, 1963, the property was assessed for $1,682,800.

There was considerable testimony tracing title of the real estate to Jordan and the execution of leases in reference thereto for the purpose of introducing evidence of fair cash value. See *Meserve* v. *Jordan Marsh Co.* 340 Mass. 660. It would serve no useful purpose to recite in detail the transactions which finally led to the acquisition of the property by Jordan. The board stated that these "sales . . . although considered were given little weight by the Board. When the sales were negotiated, Jordan, as the lessee under the favorable provisions of the 1951 lease, was in a very strong bargaining position. . . . Moreover, the sale of Parcel A resulted from the compromise of the litigation involving that parcel." In short, the board reasonably discounted the evidence because the parties involved were not negotiating at arms length with equal bargaining power.

Each party called an expert witness who gave his opinion of the value of the property. Both experts arrived at their respective opinions of the fair cash value by using the "capitalization of net income" method. Malden's expert arrived at a value of $1,500,000 and Jordan's expert at a value of $880,928. We feel it unnecessary to state their testimony in detail. The disparity between the two estimates resulted mainly from the difference in rental value attributed to the department store portion of the premises.

The board made extensive findings of fact. The decision of the board was as follows: "On the basis of all the evidence, testimony and exhibits, the above general and subsidiary findings and reasons, and the principles set forth in our opinion below, the Board finds that the fair cash value of the subject property on January 1st of each of the years in question is $1,250,000, divided as follows: Parcel A — $125,000; and Parcel B — $1,125,000."

Both parties have conceded that the scope of review of

this court is that provided for under G. L. c. 30A, § 11 (8) and § 14 (8), notwithstanding St. 1968, c. 120. After numerous extensions of time, Malden entered its appeal in this court on March 22, 1968, in advance of the effective date of St. 1968, c. 120 (July 1, 1968). We will therefore exercise our reviewing function under the provisions of G. L. c. 30A, § 14 (8).[1]

1. Malden argues that the decision is unsupported by substantial evidence and that the report of the board does not set forth adequate reasons for its decision or make adequate subsidiary findings as required by G. L. c. 30A, § 11 (8). We disagree.

There was substantial evidence to warrant the aggregate cash value of $1,250,000 arrived at by the board. Moreover we conclude that there was no error of law or procedure. Malden argues that the decision is faulty because it is of the same form as that reported in *Leen* v. *Assessors of Boston*, 345 Mass. 494, 501. In the *Leen* case, instead of subsidiary findings there was only a recital of the evidence, with no statement about which items of evidence were accepted or disregarded. Here, the board specifically stated what evidence it relied on in arriving at its final decision.[2]

---

[1] General Laws c. 30A, § 14, inserted by St. 1954, c. 681, § 1, reads in part: "(8) The court may affirm the decision of the agency, or remand the matter for further proceedings before the agency; or the court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is . . . (c) Based upon an error of law; (d) Made upon unlawful procedure; or (e) Unsupported by substantial evidence; or . . . (g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." See *Assessors of New Braintree* v. *Pioneer Valley Academy, Inc.* 355 Mass. 610, 612, fn. 1.

[2] The board expressly gave "little weight" to the transactions which eventually led to the transfer of title to Jordan, namely, the 1951 lease from Dowling to the F. N. Joslin Co., the 1954 lease executed by Alstores to Jordan, the 1963 sale of parcel B to Alstores. The board explicitly gave consideration to the following evidence in arriving at a fair cash value: the downward trend of business in the department store; competition of nearby shopping centers; absence of off-street parking facilities on the premises; the enclosed culvert running through the basement of the buildings; and the increasingly high vacancy rate in the office building. Further, the board considered floor plans, department store trade publications, photographs of the premises, operating figures for the department store. A view of the property was taken by the board. In considering the opinions of both appraisers the board gave them careful evaluation.

The board appropriately could have made more specific subsidiary findings on these points or some of them, but its decision does make reasonably clear what it was deciding as to each element of value.

The board is not required to specify the exact manner in which the figure of $1,250,000 was arrived at. The essential difference between the estimates given by the two experts was based on varying opinions as to the proper per-square foot rental values to be given to floor space occupied by the department store. There was little difference in the method of valuation, once the figure for net rental income before taxes, depreciation, and profit had been calculated. The board was not bound to accept either of the estimates. "It is true, as the assessors urge, that the conclusion reached by the board as to the value of the property did not coincide with the figure given by any witness, but it does not follow, as the assessors contend, that this conclusion was, therefore, unsupported by the evidence. The board was not required to believe the testimony of any particular witness but it could accept such portions of the evidence as appeared to have the more convincing weight. The market value of the property . . . must ultimately rest in the realm of opinion, estimate and judgment." *Assessors of Quincy* v. *Boston Consol. Gas Co.* 309 Mass. 60, 72. See *State Tax Commn.* v. *Sears, Roebuck & Co.* 344 Mass. 471.

2. Malden argues that it was error for the board to allow in evidence publications entitled "Operating Results of Department and Specialty Stores" by one Malcolm P. McNair, of the Harvard Business School, Division of Research, and others on the ground that there had been no evidence that the Malden branch operation of the Jordan Marsh Company is fairly representative of the average of department stores throughout the country doing a volume of sales in the range covered by the report. The board was entitled to receive evidence as to the relationship among rental values, store size, gross sales, and other operating figures for stores of this general type. It was not bound to accept these summary statistics as accurate or dispositive

of the point under review.  "Statements of facts of general interest to persons engaged in an occupation contained in a list, register, periodical, book or other compilation, issued to the public, shall, in the discretion of the court, if the court finds that the compilation is published for the use of persons engaged in that occupation and commonly is used and relied upon by them, be admissible in civil cases as evidence of the truth of any fact so stated." G. L. c. 233, § 79B, inserted by St. 1947, c. 385, § 1.  Malden also objects to oral statements concerning the qualifications of Professor McNair made during the introduction of subsequent editions of his report.  We believe these comments were not prejudicial.  Malden's requests for rulings were properly dealt with in the circumstances.  Other alleged errors, not argued by Malden, are treated as waived.  S. J. C. Rule 1:13, 351 Mass. 738.

The decision of the Appellate Tax Board is affirmed. Jordan is to have costs of appeal.

*So ordered.*